UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-565-KS

| | |
|---|---|
| MLU SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| LAWRENCE MOBILE HOME ) | |
| SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

This case is before the court on Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) [DE #14], the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Plaintiff has responded [DE #17], and Defendant has replied to Plaintiff's response in opposition [DE #18]. Accordingly, the matter is ripe for decision. For the reasons stated below, Defendant's motion to dismiss is denied.

## BACKGROUND

Plaintiff MLU Services, Inc., ("MLU") and Defendant Lawrence Mobile Home Service, Inc., ("LMH") are both involved in disaster-recovery construction. (Compl. [DE #1] ¶¶ 1, 2.) LMH had worked as a subcontractor to MLU on prior disaster-recovery projects. (Compl. ¶ 6, 31-33.) Following Hurricane Matthew in 2016, the Federal Emergency Management Agency ("FEMA") solicited offers to haul and install temporary housing to serve displaced residents in eastern North Carolina. (Compl.

¶¶ 3, 20-22.) FEMA's solicitation required offers to be submitted within two days and by businesses located in eastern North Carolina. (Compl. ¶¶ 3, 8, 23-24.)

LMH, headquartered in Goldsboro, North Carolina, invited MLU, headquartered in Georgia, to submit a joint offer to FEMA. (Compl. ¶¶ 4, 25-27.) LMH, although located in North Carolina, lacked the experience, financing, and knowledge needed for the project. So it looked to partner with MLU, who had experience providing disaster-recovery services on a national basis. (Compl. ¶¶ 4, 26, 28-29.) The parties orally agreed to work together, with MLU preparing the offer listing LMH as the "Prime Contractor" and MLU as the "Prime Subcontractor." (Def.'s Mot. Dismiss, Ex. 1 [DE #15-1] at 3; Compl. ¶¶ 5,-6, 33-36.) The parties agreed to negotiate a final written agreement after the offer had been submitted. (Compl. ¶¶ 5, 37.)

Upon acceptance of the offer, FEMA notified MLU who, in turn, notified LMH. (Compl. ¶¶ 48-49.) MLU then contacted LMH to negotiate the final written agreement; however, LMH refused to participate in further negotiations. (Compl. ¶¶ 50-51.) MLU and LMH had already agreed on pricing for LMH's hauling and installation work, but LMH's representative Leroy Lawrence avoided calls to further discuss the matter with MLU. (Compl. ¶¶ 51-54.) When confronted in person, Mr. Lawrence informed MLU that his relatives—who had a financial stake in the project—were resisting plans for LMH to negotiate a final agreement with MLU. (Compl. ¶ 55.) MLU offered LMH a final written agreement to sign, but Mr. Lawrence refused to sign or negotiate until the issues were resolved with his family. (Compl.

2

¶ 58.) LMH neither proposed alternative terms nor specified any terms in the written agreement that it found disagreeable. (Compl. ¶ 60.) LMH started performing work on the project without notifying MLU (Compl. ¶¶ 61-62) and has since kept the funds awarded for the project (Compl. ¶ 63). (*See also* Pl.'s Resp. Opp'n [DE #17] at 2.)

MLU filed the instant lawsuit on November 9, 2017, asserting the following claims against LMH: (1) breach of duty to negotiate in good faith (Compl. at 12–13); (2) per se unfair conduct in violation of N.C. Gen. Stat. § 75-1.1 (*id.* at 13–14); (3) unfair acts in violation of N.C. Gen. Stat. § 75-1.1 (*id.* at 14–15); (4) deceptive acts in violation of N.C. Gen. Stat. § 75-1.1 (*id.* at 15–17); and (5) quantum meruit (*id.* at 17). MLU seeks compensatory damages, treble damages, attorney fees, and prejudgment interest and costs. (*Id.* at 17–18.) Presently before the court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim.

## DISCUSSION

### I. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint or any claims contained therein that fail to state a claim upon which relief may be granted. The intent of Rule 12(b)(6) is to test the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (all reasonable inferences drawn in favor of plaintiff). "The issue

3

is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In considering a motion to dismiss, the court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Pierce v. Garmon*, No. 4:16-CV-20-BO, 2016 WL 7235717, at *2 (E.D.N.C. Dec. 13, 2016).

In order to survive a 12(b)(6) motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544 (2007). A complaint need not contain detailed factual allegations, but it must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which are sufficient to raise a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Facial plausibility is more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. It requires the plaintiff to articulate facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Ordinary principles of federal pleading practice require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). However, a claim that "bear[s] 'the substance of fraud'" must be pled with particularity. *Petruzzo v. Health Extras, Inc.*, No. 5:12-CV-113-FL, 2014 WL 12546371, at *10 (E.D.N.C. Sept. 8, 2014) (quoting *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008)); *see also* Fed. R. Civ. P. 9(b).

## II. Motion to Dismiss

### A. Breach of Duty to Negotiate in Good Faith

MLU alleges that LMH breached the parties' agreement to negotiate a final written agreement in good faith. (Compl. at 12–13.) Specifically, MLU alleges that LMH refused to negotiate by dodging phone calls and meetings with MLU and started performing work on the project without telling MLU. (Pl.'s Resp. Opp'n at 8–9; Compl. at 8–10.) LMH argues that MLU has pled an unenforceable agreement to agree and thus there is no valid contract upon which to base a claim for breach of duty to negotiate in good faith. (Def.'s Mem. Supp. Mot. Dismiss at 5–8.)

Because this case is before the court on diversity jurisdiction, North Carolina substantive law governs Plaintiff's case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (per curiam); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999); *Martinez v. Nat'l Union Fire Ins. Co.*, 911 F. Supp. 2d 331, 335 (E.D.N.C. 2012).

The North Carolina Business Court addressed a breach of duty to negotiate in good faith claim in *RREF BB Acquisitions, LLC v. MAS Props., LLC*, No. 13 CVS 193, 2015 WL 3646992, at *20 (N.C. Bus. Ct. June 9, 2015). Recognizing that North

Carolina law "already implies in every contract a duty of good faith and fair dealing," the court determined that an agreement to continue negotiating in good faith could be enforceable "provided that it met all of the requirements for contract formation under North Carolina law." *Id.* at *20, 57.

In North Carolina, "a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 6, 748 S.E.2d 171, 175 (2013); *see also Elks v. N. State Ins. Co.*, 159 N.C. 619, 624–26, 75 S.E. 808, 810 (1912) ("There is no contract unless the parties thereto assent, and they must assent in the same thing, in the same sense."). Mutual assent is often understood as a "meeting of the minds," occurring when the parties demonstrate an intent to be bound by definite terms. *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007). In addition, the terms of the contract must be sufficiently definite to be enforceable. *See Horton v. Humble Oil & Ref. Co.*, 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961). Following *RREF*, the North Carolina Business Court reaffirmed that North Carolina law recognizes a claim for breach of an agreement to negotiate in good faith. *See New Friendship Used Clothing Collection, LLC v. Katz*, No. 16 CVS 14819, 2017 WL 3601714, at *15 (N.C. Bus. Ct. Aug. 18, 2017); *Recurrent Energy Dev. Holdings, LLC v. SunEnergy1, LLC*, No. 16 CVS 15107, 2017 WL 924922, at *16 (N.C. Bus. Ct. Mar. 7, 2017); *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, No. 14 CVS 1783, 2016 WL 5890390, at *2 (N.C. Bus. Ct. Oct. 7, 2016).

LMH contends that MLU's claim is fatally deficient because the "alleged contract is nothing more than an 'agreement to agree.'" (Def.'s Mem. Supp. Mot. Dismiss at 8.) LMH argues that the agreement pled by MLU fails to specify material terms, such as any agreement between the parties on

> compensation to be paid to MLU, who would supply employees or what their tasks would be, who would supply equipment or material for the project, who would hire subcontractors, what the terms, rates, repayment dates or amounts of the financing would be, or the scope of work to be performed by MLU.

(*Id.* at 11.)

As in *New Friendship*, MLU's claim "is labeled 'breach of duty to negotiate in good faith,' [but] . . . alleges breach of an *agreement* to negotiate in good faith" and is more appropriately considered a breach of contract claim. *New Friendship*, 2017 WL 3601714, at *14 (emphasis added). In support of this claim, MLU has pled that LMH and MLU agreed they would adhere to the same model they used when working together on a prior project, with MLU managing and financing the project and LMH hauling and installing the temporary housing units. (Compl. ¶¶ 32-33.) Because of MLU's experience in such matters, the parties agreed that MLU would prepare and submit the substantive offer to FEMA, which was signed by Leroy Lawrence, as representative for LMH. (Compl. ¶ 47.) MLU based the offer on a price list that LMH had sent for its "hauling and installing work" on the project, together with MLU's fees for financing, management, and materials. (Compl. ¶ 35.) MLU has specifically pled that "due to the tight turnaround time to submit an offer, LMH and MLU agreed

7

that they would negotiate a final written contract after they submitted the offer." (Compl. ¶ 37.)

Defendant contends that this case is virtually identical to *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572 (E.D. Va. 2013), *aff'd*, 549 F. App'x 211 (4th Cir. 2014), in which a written "Teaming Agreement" entered into for the purpose of obtaining a contract award from the federal government was determined to be unenforceable. However, Defendant's argument fails to recognize that *Cyberlock* was decided on the defendant's motion for summary judgment, not on a motion to dismiss. *See Cyberlock*, 939 F. Supp. 2d at 574. In fact, the court had previously denied a motion to dismiss the plaintiff's claim, stating: "[t]he Court declines to find, at this early stage of the litigation, that the Teaming Agreement lacked the essential elements of a contract." *Cyberlock Consulting, Inc. v. Info. Experts, Inc.,* 876 F. Supp. 2d 672, 679 (E.D. Va. 2012).

Like the complaint in *Cyberlock*, the complaint here is sufficient to withstand a 12(b)(6) motion. MLU has plausibly alleged that the parties intended to enter into a binding agreement to work together on the FEMA project and to negotiate a final written contract upon acceptance of their offer. As the court stated in *Cyberlock*:

> The parties' intent is evidenced not only by the terms of the [agreement], but also by the parties' conduct and the surrounding circumstances. And here, [Plaintiff] alleges surrounding circumstances which plausibly suggest that the parties intended for the [agreement] to constitute more than just an agreement to agree—for example, the parties' previous collaboration on a [similar] project.

*Cyberlock,* 876 F. Supp. 2d at 679.

In light of the parties' conduct and surrounding circumstances as alleged in Plaintiff's complaint, the court concludes that Plaintiff's claim must be allowed to proceed. Plaintiff has sufficiently alleged that the parties intended to be bound by their agreement. Taking the facts alleged as true, the parties' agreement would appear to include terms that require performance by both LMH and MLU. It can reasonably be inferred that the parties entered into an exclusive relationship based on models of past work and there existed a duty to negotiate in good faith within the meaning of North Carolina law. Therefore, the Court declines to find, at this early stage of the litigation, that the agreement between the parties lacked the essential elements of a contract. As such, the Court concludes that MLU has adequately stated a claim for breach of an agreement to negotiate in good faith.

B. N.C. Gen. Stat. § 75-1.1

Plaintiff's second, third, and fourth claims for relief each assert violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq*. First, MLU maintains that LMH's breach of the implied covenant of good faith and fair dealing in the parties' agreement to negotiate a final written contract constitutes a "per se" violation of N.C. Gen. Stat. § 75-1.1. (Compl. at 13–14.) Plaintiff also alleges that Defendant's actions were unfair (Compl. at 14-15) and deceptive (Compl. at 15–17) within the meaning of N.C. Gen. Stat. § 75-1.1.

The UDTPA prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. In order to state a claim for unfair or deceptive trade practices, a plaintiff

9

must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the act in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. N.C. Gen. Stat. § 75-1.1; *Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

The UDTPA generally covers five categories of conduct: (1) unfair conduct, (2) deceptive misrepresentations, (3) certain per se violations of § 75-1.1, (4) breaches of contract occurring under aggravating circumstances, and (5) anti-competitive conduct. *Sparks v. Oxy-Health*, LLC, 134 F. Supp. 3d 961, 997–98 (E.D.N.C. 2015) (collecting cases); *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1022 (E.D.N.C. 2015), *aff'd*, 674 F. App'x 250 (4th Cir. Dec. 29, 2016). "[T]he conduct sufficient to constitute an unfair or deceptive trade practice is a 'somewhat nebulous concept,' and depends on the circumstances of the particular case." *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 122-23 (4th Cir. 2006). Whether a particular commercial act or practice constitutes an unfair or deceptive practice is a question of law for the court. *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

An act or practice is unfair if it "offends established public policy"; if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers"; or if it "amounts to an inequitable assertion of [a party's] power or position." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (emphasis omitted); *see also Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). "[T]he fairness or unfairness of particular conduct is not an abstraction

to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others." *S. Atl. Ltd. P'ship of TN, L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (quoting *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 400, 248 S.E.2d 739, 744 (1978)).

An act or practice is deceptive under the meaning of § 75-1.1 if it has the capacity or tendency to deceive. *RD & J Props. v. Lauralea-Dilton Enters., LLC,* 165 N.C. App. 737, 748, 600 S.E.2d 492, 501 (2004). Mere breach of contract without more is not enough, *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998), though actual deception is not required, *Marshall*, 302 N.C. at 548. The relevant question is whether the act had the tendency or capacity to mislead or created a likelihood of deception. *Id.*

Here, MLU has alleged sufficient facts to state a claim under N.C. Gen. Stat. § 75-1.1. MLU states that it has thirty years of experience in the disaster-recovery business and that LMH used MLU's name, experience and reputation to obtain the work from FEMA. (Compl. ¶ 105.) MLU alleges that LMH invited MLU to submit a joint offer and represented to FEMA that LMH and MLU would work together if awarded the North Carolina project, emphasizing to FEMA their prior work together on similar projects. (Compl. ¶ 98.) FEMA accepted the offer and LMH has excluded MLU from the project and kept all of the funds for itself. (*Id.*) MLU alleges that it actually and reasonably relied on LMH's representations and, in the absence of LMH's representations, would have prepared and submitted an offer with another

11

North Carolina business. (Compl. ¶ 107.) The facts alleged by MLU further support its assertion that LMH's actions proximately and actually injured MLU. (Compl. ¶ 111.) The Court finds that Plaintiff has sufficiently pled allegations to support a claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1 and therefore denies Defendant's motion to dismiss Counts Two, Three, and Four of Plaintiff's complaint.

### E. Quantum Meruit

In the alternative to its claim for breach of duty to negotiate in good faith, MLU asserts a claim of quantum meruit, alleging that LMH has been unjustly enriched by MLU's services. (Compl. at 17.) LMH argues that this claim should be dismissed because MLU has not alleged sufficient facts to support the claim. (Def.'s Mem. Supp. Mot. Dismiss at 23–25.)

A quantum meruit claim requires that a plaintiff show: (1) the plaintiff conferred a measurable benefit to the defendant, (2) the defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously. *Jones v. Am. Airlines, Inc.*, No. 5:08-CV-236-BR, 2008 WL 9411160, at *5 (E.D.N.C. Oct. 16, 2008) (citing *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)). Where the benefit conferred is in the nature of services rendered, recovery is for the reasonable value of services rendered. *Id.* (quoting *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998)). Quantum meruit claims require a showing that both parties understood that services were rendered with an expectation of payment. *Highland Paving Co., LLC v. First Bank*, 227 N.C. App. 36,

12

43–44, 742 S.E.2d 287, 293 (2013); *Wing v. Town of Landis*, 165 N.C. App. 691, 693, 599 S.E.2d 431, 433 (2004).

While a party cannot recover on both a contract claim and a quasi-contract claim, Plaintiff need not elect between these remedies at this stage of the litigation. *See Thimbler, Inc. v. Unique Sols. Design, Ltd.*, No. 5:12-CV-695-BR, 2013 WL 4854514, at *6 (E.D.N.C. Sept. 11, 2013) ("At the pleading stage, [the plaintiff] is not required to guess whether it will be successful on its contract claim or its quasi-contract claim.").

MLU alleges that it rendered services to LMH in obtaining the FEMA award, that LMH knowingly and voluntarily accepted these services, and that MLU did not render the services gratuitously. (Compl. at 17; Pl.'s Resp. Opp'n at 19–21.) Accepting the facts alleged as true, the court is persuaded that MLU has sufficiently alleged that LMH has been unjustly enriched as a result of services rendered by MLU and accepted by LMH. Thus, the court denies Defendant's motion to dismiss this claim.

### F. Affirmative Defenses

Defendant argues that Plaintiff's claims fail as a matter of law by affirmative defenses raised in the pleadings. (Def.'s Mem. Supp. Mot. Dismiss at 26–27.) Specifically, Defendant raises the doctrines of unclean hands, *in pari delecto*, equitable estoppel, and quasi-estoppel. (*Id.* at 26–28.)

A Rule 12(b)(6) motion looks at the legal adequacy of the complaint rather than the merits of affirmative defenses. *Richmond, Fredericksburg & Potomac R.R. Co.*, 4 F.3d 244, 250 (4th Cir. 1993); *see also Goodman v. Praxair, Inc.,* 494 F.3d 458, 464

(4th Cir. 2007). "In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R.R. Co., 4 F.3d at 250.* Here, as in *Richmond, Fredericksburg & Potomac R.R.*, none of the "asserted defenses appear on the face of the complaint, [and] it is inappropriate to address them in the current posture of the case." *Id.* The defenses are more properly reserved for consideration on a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [DE #14] is DENIED.

This 19th day of February 2019.

_____
KIMBERLY A. SWANK
United States Magistrate Judge